UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NIKOLA BOGICEVIC,<br><br>                Plaintiff,<br>     v.<br><br>SEABOURN CRUISE LINE LIMITED,<br><br>                Defendant. | CASE NO. C21-1573JLR<br><br>ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION |

## I. INTRODUCTION

Before the court is Defendant Seabourn Cruise Line Limited's ("Seabourn") motion to compel arbitration. (Mot. (Dkt. # 4); Reply (Dkt. # 9).[1]) Plaintiff Nikola Bogicevic opposes Seabourn's motion. (Resp. (Dkt. # 7).) The court has considered the motion, all submissions filed in support of and in opposition to the motion, the relevant

---

[1] Unless otherwise indicated, the court uses the CM/ECF page numbers when citing to the parties' pleadings.

ORDER - 1

portions of the record, and the applicable law. Being fully advised,[2] the court GRANTS Seabourn's motion to compel arbitration.

## II.   BACKGROUND

Mr. Bogicevic, a Serbian citizen, worked for Seabourn as a seafarer aboard the cruise ship *Seabourn Ovation* (the "Vessel"). (*See* Compl. (Dkt. # 1) ¶ 5 (describing himself as a seaman because of his position as a waiter aboard the Vessel); Mot. at 5 (describing him as a seafarer); Resp. at 1 (same).) The terms of his employment are set forth in an Employment Agreement, signed by both parties prior to Mr. Bogicevic boarding the Vessel, and a Collective Bargaining Agreement ("CBA"). (Ex. 1 to Mot. (Dkt. # 4-1) ("Employment Agreement"); Ex. 2 to Mot. (Dkt. # 4-2) ("CBA").) The Employment Agreement provided Mr. Bogicevic notice that his employment was subject to the CBA. (Employment Agreement.) By signing the Employment Agreement, Mr. Bogicevic acknowledged he had "been afforded the opportunity to review the terms and conditions . . . of the CBA"; that he had "been afforded an opportunity to seek advice on th[e] agreement before signing it"; and that he "agree[d] to abide by the terms and conditions set forth in th[e] agreement and . . . the CBA." (*See id.*) Article 35 of the CBA contains an arbitration provision, which states in pertinent part:

> If not resolved by the Unions, the Owners/Company, and/or the Seafarer as provided in the Dispute Resolution Procedure above, all grievances and any other dispute, whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under this Agreement, including

---

[2] Neither party has requested oral argument (*see* Mot. at 1; Resp. at 1), and the court finds that oral argument would not be helpful to its disposition of the motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

> but not limited to claims for personal injury/disability or death, no matter how described, pleaded or styled, and whether asserted against the Owners/Company, Master, employer, Vessel owner, Vessel or Vessel operator shall be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions on the Recognition and Enforcement of Foreign Arbitral Awards (New York 1958), 21 U.S.T. 2517, 330 U.N.T.S, ("The Convention"), except as provided by any government mandated contract. In addition, Seafarer agrees to arbitrate any and all disputes regarding the existence, validity, termination, or enforceability of any term or provision in this Agreement.
>
> Any arbitration . . . shall be administered in accordance with the American Arbitration Association – International Dispute Resolution Rules ("ICDR") . . . .
>
> The Owners/Company shall pay for the cost of arbitration proceedings. . . .
>
> The Owners/Company, the Unions, and the Seafarer acknowledge that by agreeing to arbitration they voluntarily and knowingly waive any right they may have to a jury trial. The arbitration referred to in this Article is exclusive, mandatory, final and binding. Claims and lawsuits arising from or relating to the Seafarers service onboard the Vessel shall not be brought by any party to this Agreement except to compel arbitration or to enforce the arbitration award.

(*See* CBA, Art. 35.)

Mr. Bogicevic alleges that he suffered injuries during two distinct events while he was employed by Seabourn. First, on or about January 21, 2020, he allegedly sustained severe injuries when his foot sunk into the sand and became stuck as he tried to move while transporting food and beverages from Seabourn's transport vessel onto Ko Kut Island. (*See* Compl. ¶¶ 7-12.) Second, on or about April 2, 2020, he allegedly sustained a severe injury to his left knee while descending an obstructed stairway aboard the *Seabourn Ovation*. (*See id.* ¶ 13.)

//

ORDER - 3

On September 20, 2021, Mr. Bogicevic filed and commenced an arbitration proceeding with the American Arbitration Association-International Dispute Resolution Rules ("AAA-ICDR"), as required by the CBA, for injuries that he allegedly suffered while employed by Seabourn. (*See* Resp. at 2.[3]) Shortly thereafter, an AAA-ICDR Case Filing Specialist, sent a letter to the parties' representatives, notifying Seabourn of its obligation to pay the filing fee and provide a copy of the parties' agreement concerning arbitration. (*See id.*) The Case Filing Specialist stated that if the AAA-ICDR would close the case if it did not receive these materials by November 1, 2021. (*See id.*) Seabourn failed to pay the filing fee or provide a copy of the arbitration agreement by the November 1, 2021 deadline. (*See id.*) As a result, the case was administratively closed on November 5, 2021, pending receipt of the payment. (*See id.* at 3; *see also* Reply at 5.)

Seabourn ultimately paid the filings fee on or about November 15, 2021. (*See* Reply at 5.) After confirming receipt of the arbitration filing fee, the Case Filing Specialist asked Mr. Bogicevic to confirm that he wanted the arbitration to move forward. (*See id.* at 5-6.) Mr. Bogicevic, however, declined to move forward with the arbitration. (*See id.*) Instead, he commenced this lawsuit against Seabourn on November 22, 2021. (*See generally* Compl.) This matter involves the same causes of action that Mr. Bogicevic invoked in the arbitration proceeding: (1) Jones Act negligence; (2)

//

---

[3] The court cites to the assertions contained in the parties' briefs because Mr. Bogicevic did not file a declaration or exhibits to support the assertions in his response and Seabourn did not file a declaration or exhibits to support assertions in its reply. (*See generally* Dkt.) The court also notes that the parties did not dispute these assertions. (*See generally id.*)

unseaworthiness; (3) failure to provide maintenance and cure; and (4) failure to treat.[4] (*See* Resp. at 3; Compl. ¶¶ 14-48 (bringing claims under the Jones Act and general maritime law).)

Seabourn now moves to compel arbitration and dismiss this action pursuant to Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208; the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517; Federal Rule of Civil Procedure 12(b)(3); and the terms and conditions of Mr. Bogicevic's Employment Agreement and the CBA. (*See generally* Mot.)

### III. ANALYSIS

The court begins by addressing the legal standard for motions to compel arbitration before turning to its analysis of Seabourn's motion.

**A.  Legal Standard for Motions to Compel Arbitration**

It is well-settled that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ." *Id.* at 24-25. "[T]he emphatic federal policy in favor of arbitral dispute resolution . . . applies with special force in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985).

---

[4] These are standard causes of action for personal injury cases that arise in the maritime context. *See Javier v. Carnival Corp.*, No. 09CV2003-LAB WMC, 2010 WL 3633173, at *2 (S.D. Cal. Sept. 13, 2010) (citing *Sementilli v. Trinidad Corp.*, 155 F.3d 1130, 1137 (9th Cir. 1998)).

ORDER - 5

1    International arbitration agreements, like the one in this case (*see* Employment Agreement; CBA), are subject to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). *See* Convention Done at New York June 10, 1958, 21 U.S.T. 2517 (entered into force with respect to the United States Dec. 29, 1970). The United States is a signatory to the Convention and implemented it through the enactment of Chapter 2 of the FAA, 9 U.S.C. §§ 201-208. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). The Convention requires signatory states, such as the United States, "[to] recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them." *See id.* (quoting Convention, Art. II(1)); *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1261 (11th Cir. 2011) (noting that the Convention requires signatory states "to give effect to private international arbitration agreements and to recognize and enforce arbitral awards made in other contracting states"). Article II, Section 3 of the Convention provides that "[t]he court of a Contracting State . . . shall, at the request of one of the parties, refer the parties to arbitration." Convention Art. II(3); *see also* 9 U.S.C. § 206 (providing that "[a] court having jurisdiction under [Chapter 2] may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States").

Courts determining whether to compel arbitration under the Convention and its implementing legislation should conduct a "very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005) (quoting *Francisco v. STOLT*

*ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 654-55 (9th Cir. 2009). "Under Chapter 2 of the FAA, courts apply a two-step analysis" when a party moves to compel arbitration pursuant to an agreement governed by the Convention. *See Mirza v. Cachet Hotel Grp. Ltd. Cayman L.P.*, No. 2:17-CV-07140-RGK-KS, 2017 WL 5593508, at *2 (C.D. Cal. Nov. 17, 2017), *on reconsideration*, No. 2:17-CV-07140-RGK-KS, 2018 WL 4740174 (C.D. Cal. Jan. 10, 2018) (first citing *Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1241 (S.D. Cal. 2000); and then citing 9 U.S.C. § 206). First, the court analyzes four preliminary questions to determine whether an arbitration agreement exists that falls under the Convention. *See id.* (citing *Chloe*, 109 F. Supp. 2d at 1241); *Balen*, 583 F.3d at 654-55; *Bautista*, 396 F.3d at 1294 n.7. Second, if there is such an arbitration agreement, the court must order arbitration unless the agreement is "null and void, inoperative or incapable of being performed." Convention, Art. II(3); *see also Balen*, 583 F.3d at 654-55 (quoting *Mitsubishi Motors*, 473 U.S. at 619 n. 3); *Mirzai*, 2017 WL 5593508, at *2 (citing *Chloe*, 109 F. Supp. 2d at 1241).

B.  **Seabourn's Motion to Compel Arbitration**

Seabourn argues that Mr. Bogicevic's claims in this action are subject to the parties' written arbitration agreement; that the agreement is enforceable under the Convention; and that the court should compel arbitration with the AAA-ICDR in accordance with the CBA and Mr. Bogicevic's Employment Agreement, and dismiss this action. (*See generally* Mot.; Reply.) Mr. Bogicevic does not challenge Seabourn's contention that the agreement satisfies the four jurisdictional prerequisites, nor does he

argue that the agreement is "null and void, inoperative or incapable of being performed" as provided by Article II, Section 3 of the Convention. (*See* Resp. at 3-6.) Instead, he argues that the court should not compel arbitration because Seabourn "is effectively in default" in the arbitration proceeding due to its untimely payment and, as a result, it would be inappropriate to compel arbitration and stay the proceedings under 9 U.S.C. §§ 3-4.[5] (*See id.* (noting that the CBA requires Seabourn to pay the cost of arbitration).)

The court first considers whether the four jurisdictional prerequisites have been met before discussing whether the parties' arbitration agreement is unenforceable.

1. Whether the Arbitration Agreement Falls Under the Convention

An arbitration agreement falls under the Convention when the following four jurisdictional prerequisites are met: (1) there is an agreement in writing, within the meaning of the Convention, to arbitrate the dispute in question; (2) the agreement provides for arbitration in the territory of a signatory of the Convention; (3) the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial; and (4) a party to the agreement is not a U.S. citizen, or that the

---

[5] Chapter 1 of the FAA, 9 U.S.C. §§ 1-16, contains the general provisions of the Act and generally governs motions to stay proceedings and compel arbitration pursuant to non-Convention domestic arbitration agreements. *See* 9 U.S.C. §§ 1-16. Although the Convention and Chapter 2 of the FAA contain no express provision concerning a stay of the underlying litigation, a court may compel arbitration and stay proceedings under Chapter 2 of the FAA and the Convention because "such authority exists both implicitly, as well as by incorporation of Chapter 1 into Chapter 2 and the Convention through 9 U.S.C. § 208." *See DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 725 (S.D.N.Y. 2003). Chapter 1 of the FAA is inapplicable to the instant case, however, because the instant motion seeks to compel arbitration pursuant to an international arbitration agreement governed by the Convention and Chapter 2 of the FAA and Seabourn does not seek to stay these proceedings under 9 U.S.C. § 3. (*See generally* Mot.; Reply.)

commercial relationship has some reasonable relation with one or more foreign states. *Balen*, 583 F.3d at 654-55 (quoting *Bautista*, 396 F.3d at 1294 n.7).

The court agrees with Seabourn's contention that the four factors are satisfied in the instant case.[6] First, Mr. Bogicevic entered into an Employment Agreement with Seabourn in which he "agree[d] to abide by the terms and conditions set forth in this agreement and . . . the CBA." (*See* Employment Agreement.) The CBA specifically mandates the arbitration of "all grievances and any other dispute, whatsoever, whether in contract, regulatory, statutory, common law, tort or otherwise relating to or in any way connected with the Seafarer's service for the Owners/Company under this Agreement, including but not limited to claims for personal injury/disability or death." (*See* CBA, Art. 35.) Because the arbitration clause in the CBA is incorporated by reference into Mr. Bogicevic's signed Employment Agreement, the court concludes that the parties have an agreement to arbitrate in writing as defined by the Convention. *See* Convention, Art. II(2) (stating that parties have an "agreement in writing" if there is "an arbitral clause in a contract or an arbitration agreement, signed by the parties"); *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214-15 (11th Cir. 2011) (concluding that parties had an arbitration agreement when document containing such an agreement was incorporated by reference into the employment agreement). Moreover, the court concludes that the

---

[6] Mr. Bogicevic did not address Seabourn's arguments as to these four factors in his response (*see generally* Resp.), and the court construes his silence as an admission that the arguments have merit, *see* Local Rules W.D. Wash. LCR 7(b)(2); *see also Nieuwejaar v. Nationstar Mortg., LLC*, No. C15-1663JLR, 2016 WL 1436123, at *4 (W.D. Wash. Apr. 12, 2016) ("The court construes Plaintiffs' silence regarding this argument as an admission of its merit, and declines to consider the issue further."), *aff'd*, 700 F. App'x 723 (9th Cir. 2017).

parties' arbitration agreement covers the dispute in question because Mr. Bogicevic's claims arise out of injuries that he allegedly suffered while working for Seabourn and thus are clearly "relat[ed] to or . . . connected with" that service. (*See* Compl. ¶¶ 5-48; *see also* CBA, Art. 35.)

Second, while the agreement does not expressly identify the forum for arbitration, it does provide that the arbitration will be conducted by the AAA-ICDR in accordance with its rules. (*See* CBA, Art. 35.) Because the AAA-ICDR is an American organization, the court finds that the agreement provides for arbitration in the United States, a signatory country to the Convention.[7] *See GE Energy*, 140 S. Ct. at 1644; *see also Vera v. Cruise Ships Catering*, No. CV 13-62022-CIV, 2014 WL 12478007, at *1 (S.D. Fla. May 6, 2014) (finding the second jurisdictional prerequisite met where the CBA said that disputes "shall be subject to the arbitrate of a Board of Arbitration in accordance with Italian Law" and Italy is signatory to the Convention), *aff'd sub nom. Vera v. Cruise Ships Catering & Servs. Int'l, N.V.*, 594 F. App'x 963 (11th Cir. 2014); *In re Guardianship of Sequerra v. Lines*, No. 07-20929-CIV, 2007 WL 9702895, at *3 (S.D. Fla. Apr. 24, 2007) (finding the second prerequisite met where the agreement provided that "arbitration shall proceed before a voluntary arbitrator or panel of arbitrators or before the NLRC," which referred to organizations located in the Philippines, and stated that disputes shall be governed by the laws of the Philippines, a signatory to the Convention).

---

[7] Seabourn argues that the agreement provides for arbitration in the United States (*see* Mot. at 10), and Mr. Bogicevic does not challenge this position (*see generally* Resp.).

1    Third, the agreement arises out of a cruise ship employment contract, which has
2    been recognized by the Ninth Circuit as a commercial relationship.  *See Rogers v. Royal*
3    *Caribbean Cruise Line*, 547 F.3d 1148, 1154-57 (9th Cir. 2008) (enforcing the arbitration
4    provisions in the plaintiffs' cruise ship employment contracts since the employment
5    contracts were commercial).  Fourth, Mr. Bogicevic is a citizen of Serbia, not the United
6    States.  (*See* Compl. ¶ 3.)

7    Because all four factors have been satisfied, the court concludes that the parties'
8    agreement to arbitrate this dispute falls under the Convention.

9        2.   Whether the Arbitration Agreement is Unenforceable

10   If the Convention applies to an arbitration agreement, the court must order
11   arbitration unless the agreement is "null and void, inoperative or incapable of being
12   performed."  Convention, Art. II(3); *see also Balen*, 583 F.3d at 654-55 (quoting
13   *Mitsubishi Motors*, 473 U.S. at 619 n.3); *Javier*, 2010 WL 3633173, at *3 (noting that the
14   concern here is not with the underlying, substantive fairness of an arbitration clause, but
15   rather the validity of the agreement that contains that clause).  "The Convention's 'null
16   and void' clause . . . limits the bases upon which an international arbitration agreement
17   may be challenged to standard breach-of-contract defenses" such as "fraud, mistake,
18   duress, and waiver."  *Bautista*, 396 F.3d at 1302 (quoting *DiMercurio v. Sphere Drake*
19   *Ins. PLC*, 202 F.3d 71, 79-80 (1st Cir. 2000)).  In light of "'the strong public policy
20   favoring arbitration,' including international arbitration," the party challenging the
21   validity of the agreement bears the burden of establishing that the agreement is
22   unenforceable.  *Balen*, 583 F.3d at 654 (first citing *Mitsubishi Motors*, 473 U.S. at 631;

and then quoting *Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 726 (9th Cir. 2007)); *Rogers*, 547 F.3d at 1158.

Mr. Bogicevic argues that Seabourn "is effectively in default" for failing to pay the arbitration filing fee by the deadline and, in light of such default, it would be inappropriate for the court to stay this case and compel arbitration pursuant to 9 U.S.C. §§ 3, 4.[8] (*See* Resp. at 3-6 (citing *Sink v. Aden Enterprises, Inc.*, 352 F.3d 1197, 1201 (9th Cir. 2003)).) He claims that granting Seabourn's motion to compel arbitration would "indefinitely postpone litigation" and allow Seabourn to "default a second time." (*See id.*) The court construes this argument as asserting a waiver defense.

Mr. Bogicevic asks the court to apply the Ninth Circuit's holding in *Sink v. Aden Enterprises, Inc.* (*See* Resp. at 4-6.) In *Sink*, an employee brought an action in federal court alleging the employer breached his employment agreement. *Sink*, 352 F.3d at 1198. The district court stayed the action and compelled arbitration pursuant to Chapter 1 of the FAA based on the arbitration clause in the employment agreement. *Id.* Although the employer was required to pre-pay the costs of arbitration pursuant to the employment agreement, it failed to do so before the payment deadline. *See id.* at 1198-99 (noting that the arbitrator confirmed the deadline in two letters). The arbitrator granted the employee's motion for an order of default, and the arbitration organization cancelled the arbitration. *Id.* at 1199. The employee then filed a motion to lift the stay in the district

---

[8] As discussed above, 9 U.S.C. §§ 3, 4 are inapplicable to this case because Seabourn does not seek to stay these proceedings, nor does it seek to compel arbitration under Chapter 1 of the FAA. (*See generally* Mot.; Reply.)

ORDER - 12

court, which the court granted. *Id.* Shortly thereafter, the employer informed the court that it had obtained the money necessary to proceed with arbitration and again moved to compel arbitration and stay the proceedings pursuant to Sections 3 and 4 of the FAA. *See id.* The court denied its request after finding the employer had defaulted in the arbitration proceeding and thus waived its right to arbitrate. *See id.* In affirming the district court's order denying the employer's second motion to compel, the Ninth Circuit held that "a party to an arbitration agreement may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3." *See id.* at 1200-02.

The court agrees with Seabourn, however, that this case is readily distinguished from *Sink*. (*See* Reply at 6-8). *Sink* and the other cases Mr. Bogicevic cites in his response hold that a party can lose the right to compel arbitration through an order of default or the permanent termination of the arbitration proceedings based on nonpayment. (*See* Resp. at 4-5 (citing cases).) Here, however, the AAA-ICDR entered no such order. (*See* Reply at 4-6.) Unlike the employer in *Sink*, Seabourn paid the filing fee and the Case Filing Specialist attempted to reinitiate the arbitration proceeding. (*See id.* ("Because Seabourn paid the fees, it ensured the parties could, and still can, pursue arbitration.").) At least one court in this circuit has concluded that a short delay in payment of filing fees is not a material breach that results in waiver of an agreement to arbitrate. *See McLellan*, 3:16-CV-00036-JD, 2018 WL 3549042, at *5 (N.D. Cal. July 24, 2018) (stating that the defendant's payment of fees, albeit late, "was enough to avert the application of [*Sink*]").

ORDER - 13

Although Mr. Bogicevic, like the employee in *Sink*, moved for an order of default in the arbitration proceeding, arbitrator did not enter default against Seabourn. (*See id.*); *see also Dekker v. Vivint Solar, Inc.*, --- F. App'x ---, 2021 WL 4958856, at *1 (9th Cir. Oct. 26, 2021) (reversing district court's order vacating its order compelling arbitration that relied on *Sink* in part because the defendant had paid its arbitration fees after a brief delay and no order of default had been entered); *N. St., LLC v. Clipper Const., LLC*, CIV. A. 08-4604, 2010 WL 3523025, at *3 (E.D. La. Sept. 2, 2010) ("The Court finds that it is premature at this time to lift the stay of federal proceedings. Here, unlike the arbitrator in *Sink*, the arbitrator has not entered an order that Clipper is in default."). Finally, this case is procedurally distinguishable from *Sink* because Seabourn does not seek to stay these proceedings pursuant to 9 U.S.C. § 3.[9] (*See* Reply at 4-8 (seeking to compel arbitration and dismiss this action pursuant to the Convention and 9 U.S.C. §§ 201-208).)

Under the court's "very limited inquiry" at this stage, *see Bautista*, 396 F.3d at 1294, it declines to hold the arbitration agreement unenforceable under the Convention and its implementing legislation based on Seabourn's brief delay in payment of the arbitration filing fee in the absence of an order of default from the arbitrator or the permanent termination of the arbitration proceedings. Moreover, the court agrees with Seabourn's contention that even if Mr. Bogicevic wished to argue that Seabourn materially breached the agreement by its brief delay in payment of the arbitration fees,

---

[9] The court also notes that Mr. Bogicevic did not ask the court to stay these proceedings in the event that it grants Seabourn's motion to compel arbitration. (*See generally* Resp.) Thus, neither party in this case asks the court to stay these proceedings while arbitration proceeds.

such an issue should be determined by the arbitrator in light of the delegation provision in the CBA. (*See* CBA, Art. 35 (stating that the employee "agrees to arbitrate any and all disputes regarding the existence, validity, termination, or enforceability of any term or provision in this Agreement"); Reply at 7-9 (citing *Dekker*, 2021 WL 4958856, at *1 (stating that *Sink* "does not alter the enforceability" of the parties' delegation clause and, in light of that clause, the arbitrator should resolve the parties' dispute regarding whether the defendant breached the arbitration agreements)).)

In sum, the court concludes that it must compel arbitration in this case pursuant to the Convention and its implementing legislation because the four jurisdictional prerequisites are satisfied and Mr. Bogicevic fails to establish that the arbitration agreement is "null and void." *See Balen*, 583 F.3d at 654-55; Convention, Art. II(3).

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Seabourn's motion to compel arbitration (Dkt. # 4); ORDERS the parties to proceed with arbitration in accordance with the terms of Mr. Bogicevic's Employment Agreement and the CBA; and DIRECTS the Clerk to administratively close this case. Either party may move to reopen this matter for good cause shown.

Dated this 18th day of January, 2022.

JAMES L. ROBART
United States District Judge